UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BEVERLY A. ARTEMYAK,

                    Plaintiff,

        -vs-                                        05-CV-650C

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

                    Defendant.

---

Plaintiff Beverly Artemyak initiated this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying her application for Social Security disability ("SSDI") benefits.[2]  The plaintiff has filed a motion for judgment on the pleadings (Item 7), and the Commissioner has cross-moved for the same relief (Item 8), pursuant to Fed. R. Civ. P 12(c).  For the following reasons, the Commissioner's motion is denied, and plaintiff's cross-motion is granted.

## BACKGROUND

Plaintiff was born on May 27, 1957 (T. 64).[3]  She applied for SSDI benefits on October 24, 2002, alleging a disability onset date of June 1, 2002 (T. 64-65).  The application was denied on March 19, 2003 (T. 31-34).  Plaintiff then requested an

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007 and is thus substituted as defendant in this case.  *See* Fed. R. Civ. P. 25(d)(1); 42 U.S.C. § 405(g).

[2] This case was transferred to the undersigned by order of the Hon. Richard J. Arcara dated July 13, 2007.  A previous referral to Magistrate Judge H. Kenneth Schroeder was rescinded in an order dated August 20, 2007 (Item 13).

[3] References preceded by "T." are to page numbers of the transcript of the administrative record filed by defendant as part of the answer to the complaint (Item 3).

administrative hearing, which was held on December 27, 2004 before Administrative Law Judge ("ALJ") Steven A. De Monbreum, and where she appeared with counsel (T. 344-404). On June 8, 2005, the ALJ issued an unfavorable decision, finding that plaintiff was not disabled and not entitled to SSDI benefits (T. 14-28). The ALJ's decision became the Commissioner's final determination when the Appeals Council denied plaintiff's request for review on July 14, 2005 (T. 5-9). On September 14, 2005, plaintiff instituted this action seeking judicial review of the Commissioner's final determination (Item 1). The Commissioner filed an answer on December 19, 2005 (Item 3). Thereafter, the plaintiff moved for judgment on the pleadings on March 17, 2006 (Item 7), and the Commissioner cross-moved for the same relief on March 20, 2006 (Item 8). The Commissioner filed a reply to the motion on May 17, 2006 (Item 10), and plaintiff filed a reply on May 22, 2006 (Item 11). For the reasons that follow, the plaintiff's motion is granted, and the Commissioner's motion is denied.

## DISCUSSION

**I.    Scope of Judicial Review**

Under the Social Security Act, a person is entitled to Social Security disability benefits when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *Melville v. Apfel,* 198 F.3d 45, 50 (2d Cir. 1999). Such a "physical or mental impairment" must be demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. § 423(d)(3).

Determinations of disability are based on objective medical facts, diagnoses, or medical opinions inferable from these facts, subjective complaints of pain or disability, and educational background, age, and work experience.  *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983); *Fishburn v. Sullivan*, 802 F. Supp. 1018, 1023 (S.D.N.Y. 1992).

The Act states that upon district court review of the Commissioner's decision, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. §405(g).  Substantial evidence is defined as evidence which "'a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel,* 167 F.3d 770, 773-74 (2d Cir.  1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may neither try the case *de novo* nor substitute its findings for those of the Commissioner.  *Richardson,* 402 U.S. at 401.  "The court's sole inquiry is 'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner."  *Winkelsas v. Apfel,* 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000) (quoting *Sample v. Schweiker,* 694 F.2d 639, 642 (2d Cir. 1982).

However, "'[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards.'"  *Gartmann v. Sec'y of Health and Human Servs.,* 633 F.Supp. 671, 680 (E.D.N.Y. 1986) (quoting *Klofta v. Mathews,* 418 F.Supp. 1139, 1141 (E.D.Wis.

1976). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada,* 167 F.3d at 773.

## II.     Standards for Determining Eligibility for Disability Benefits

The regulations set forth a five-step process for the ALJ to follow in evaluating disability claims. *See* 20 C.F.R. §404.1520. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings"). If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work. If the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity ("RFC"), based on a series of charts provided in the regulations at 20 C.F.R. § 404, Subpart P, Appendix 2 (the "Grids"). *See Curry v. Apfel,* 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari,* 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful employment activity since the date of her alleged disability onset (T. 18). In reviewing plaintiff's medical records, the ALJ found that plaintiff has a history of kidney transplant, history of bilateral knee replacements, migraine headaches, restless leg syndrome, hypertension, renal insufficiency, anxiety, and depression. The ALJ found that these impairments, while "severe," do not meet or equal the requirements of the Listings (T. 21). Proceeding to the fourth step of the sequential evaluation process, the ALJ found that plaintiff is incapable of performing her previous relevant work in skilled and semi-skilled positions as an administrative assistant, administrative clerk, secretary, buyer, and store clerk due to a moderate restriction in the ability to handle complex job tasks (T. 25). The ALJ determined that plaintiff was capable of performing work at the light exertional level with restrictions for occasional balancing, crouching, stooping, kneeling, crawling, and climbing of stairs, ramps, scaffolds, and ladders (T. 24). Additionally, the ALJ heard the testimony of a vocational expert ("VE") who stated that, given plaintiff's specific work restrictions, she could perform unskilled jobs such as laundry worker, garment sorter, bench worker, and assembler (T. 26). Using the Grids as a framework for decision, the ALJ concluded that plaintiff retains the capacity for work that exists in significant numbers in the national economy and was not disabled for purposes of the Social Security Act at any time since the alleged onset of her disability. *Id.*

The Commissioner contends that the ALJ's findings are supported by substantial evidence. Plaintiff contends that the ALJ erred in failing to recontact her treating physician to complete an assessment of her RFC and in providing his own interpretation of the psychological evidence.

### III.   The ALJ's Duty to Recontact Plaintiff's Treating Physician

Plaintiff contends that the ALJ was under a duty to recontact her treating physician, Dr. Oleh Pankewycz, to resolve any conflicts or ambiguities in his report. The medical evidence indicates that plaintiff underwent a kidney transplant on November 30, 1978. She was diagnosed with kidney disease as an infant and had been on hemodialysis for three years prior to the transplant. She also underwent left knee replacement in 1987, bowel resection in 1995, right knee replacement in 1998, and multiple skin cancer excisions (T. 198). Her medical history includes hypertension, joint pain, urinary tract infections, immuno-compromised state, depression, anxiety, and chronic fatigue (*id.*).

In a letter dated October 5, 2004, Dr. Pankewycz advised that plaintiff's medical management has been complicated by the side effects of anti-rejection medications, including GI toxicity, joint pain, skin cancer, and fatigue (T. 198). Dr. Pankewycz stated that plaintiff is "totally disabled from a medical standpoint." (*Id.*)

Plaintiff underwent a consultative examination on February 25, 2003. Dr. Steven Dina found that plaintiff was in no acute distress, with a normal gait and no assistive devices (T. 168). She had full flexion of the cervical and lumbar spines and full range of motion of her shoulders, elbows, forearms, and wrists (*id.*). Plaintiff had decreased range

of motion in her right knee (T. 170). Her complaints related to mainly joint pain, but Dr. Dina found that plaintiff had "more subjective complaints than. . . objective findings." (*Id.*)

At the hearing, plaintiff testified that she does some cooking, light housework, sorting of laundry, and grocery shopping (T. 384-86). She keeps the family finances and goes to church (T. 386-87). Plaintiff does not drive outside a five-to-ten mile radius of her home and does not visit many public places because she is afraid of contracting diseases (T. 387-89). Plaintiff also reads, watches television, and does simple crafts (T. 390).

The ALJ stated that he "fully considered the conclusions of Dr. Pankewycz" that claimant is incapable of any gainful employment due to immunosuppressant therapy but accorded little weight to Dr. Pankewycz's conclusion inasmuch as it was "inconsistent with the remainder of the evidence which indicates that claimant's subjective complaints are not commensurate with any physical findings." (T. 23). The AL further stated that he was "unable to find anything in the medical record, other than conclusory statements such as that of Dr. Pankewycz, which are corroborative of" the limitations alleged by plaintiff at the hearing (T. 23-24).

When the evidence received from the treating physician is inadequate to determine whether a claimant is disabled, the ALJ is obligated to recontact the treating physician in an attempt to obtain additional evidence or clarification. *See* 20 C.F.R. § 404.1512(e). An ALJ may not rely merely on the absence of evidence in reaching his decision "without making an affirmative effort to fill any gaps in the record . . . ." *Garcia v. Barnhart*, 2003 WL 68040, *3 (S.D.N.Y. Jan. 7, 2003). Rather, an ALJ confronted with an incomplete record must seek out additional information sua sponte, "even when the claimant is represented by counsel . . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (citations

and internal quotation marks omitted); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] sua sponte." ); *Rivas v. Barnhart*, 2005 WL 183139, at *23 (S.D.N.Y. Jan. 27, 2005) ("[A]n ALJ has an affirmative duty to seek amplification of an otherwise favorable treating physician report where the report is believed to be insufficiently explained or lacking in support."); *Volkerts v. Soc. Sec. Admin.*, 2005 WL 2660433, at *2 (D.Conn. Sept. 29, 2003) ("[T]he ALJ must point to affirmative pieces of evidence, not simply the absence of evidence, to support his determination."); *Devora v. Barnhart*, 205 F.Supp.2d 164, 172-73 (S.D.N.Y.2002) ("The duty of the ALJ to develop the record is particularly important when it comes to obtaining information from a claimant's treating physician."). Here, although he opined that plaintiff was "totally disabled," Dr. Pankewycz did not provide a detailed medical report. Such a report would include clinical findings, laboratory findings, treatment and prognosis, and a statement of plaintiff's capabilities despite her impairments. 20 C.F.R. § 404.1513(b). "The absence of an opinion about specific functions or limitations is a gap to be filled, not a reason to discredit or disregard [Dr. Pankewycz's] opinion." *Tornatore v. Barnhart*, 2006 WL 3714649, *3 (S.D.N.Y. Dec. 12, 2006).

The Commissioner argues that the ALJ was not obligated to recontact plaintiff's treating physician because there was substantial evidence of record which demonstrated that plaintiff was not disabled (Item 10, p.4). The court has reviewed the report of Dr. Pankewycz and finds that, while it is consistent with the other medical evidence, it provides an insufficient basis for decision. *See* 20 C.F.R. §404.1527(c)(3). Accordingly, the ALJ

was obligated to recontact plaintiff's treating physician to resolve the ambiguities in his report.

## IV.    The Psychological Evidence

Plaintiff underwent a consultative psychiatric examination on February 25, 2003. Dr. Thomas Dickinson found that she was cooperative, coherent, and goal-directed (T. 161). Plaintiff's cognitive functioning was average, with fair insight and judgment (T. 162). Dr. Dickinson stated that while plaintiff would be able to maintain attention and concentration, she "would have trouble performing tasks in a consistent and reliable manner," with "complex tasks, distractions, and so on," and dealing adequately with co-workers, supervisors, customers, and strangers" (T. 163). Dr. Dickinson diagnosed depressive disorder and panic disorder with agoraphobia (T. 164). He saw "little prospect of vocational rehabilitation at this point" (T. 164).

The consultative report was then reviewed by a State Agency Review Psychologist, who found "moderate" limitations in plaintiff's ability to understand, remember, and carry out detailed instructions, to work with others, to complete a normal workday and workweek without interruptions from psychological symptoms, and to perform at a consistent pace without rest, to accept instructions and criticism from supervisors, and to travel in unfamiliar places or use public transportation (T. 192-93). The State Review Psychologist also found a "marked" limitation in plaintiff's ability to interact appropriately with the public (T. 193). The State Review Psychologist found no significant limitation in plaintiff's ability to get along with coworkers or peers (*id.*).

Plaintiff contends that remand is required because the ALJ rejected the opinion of the consultative psychologist that plaintiff was unable to interact appropriately with co-workers and based his hypothetical questions to the VE based on the report of the State Review Psychologist who did not examine the plaintiff yet found no limitations in her ability to interact with co-workers. Generally, the ALJ is to give more weight to the opinion of a medical source who has examined a claimant than to the opinion of a source who has not. *See* 20 C.F.R. §404.1527(d)(1). Additionally, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." 20 C.F.R. § 404.1527(f)(2)(ii). Here, the ALJ afforded "great weight" to the opinion of the reviewing psychologist, yet only "some weight" to the consultative psychologist who found that plaintiff "would have trouble dealing adequately with co-workers, supervisors, customers, and strangers" and showed "little prospect of vocational rehabilitation" (T. 164). There is no explanation of this discrepancy.

Additionally, in his report, Dr. Dickinson did not explain what was meant by the term "would have trouble." The ALJ, as well as the State Review Psychologist, could not know if Dr. Dickinson found marked or moderate limitations in those areas. Upon remand, the ALJ should recontact the medical source pursuant to 20 C.F.R. §404.1512(e)(1) to resolve the ambiguity. Additionally, the ALJ should adequately explain the weight given to the psychological reports.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings (Item 7) is granted, and the Commissioner's cross-motion (Item 8) is denied. The matter is

remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: September   20   , 2007
p:\opinions\05-650.sept1207